IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ABDALLAH KAROUT,                                   OPINION AND ORDER
                                           Case No. 3:12-cv-00643-AA
            Plaintiff,

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

            Defendant.
_____

Lisa R. Porter
KP LAW LLC
16200 S.W. Pacific Hwy., Suite H280
Portland, OR 97224
      Attorney for plaintiff

S. Amanda Marshall
United States Attorney
Adrian L. Brown
Assistant United States Attorney
District of Oregon
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

Jeffrey R. McClain
SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
701 Fifth Avenue, Suite 2099 M/S 221A
Seattle, WA 98104
      Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Abdallah Karout ("Plaintiff") seeks judicial review pursuant to 40 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

## **Background**

Plaintiff was born in 1967 in Lebanon and moved to the United States with his father and brother when he was thirteen. (Tr. 13, 116-122, 269.) Plaintiff has a high school education and worked as a gas station attendant for six months in 2008. (Tr. 135-49.) He has a past history of cocaine, alcohol and marijuana dependance. (Tr. 268-278.) Plaintiff was convicted of conspiracy to distribute methamphetamine in 2005 and was sentenced to thirty-five months in federal prison, although his time was decreased due to his successful completion of the Bureau of Prisons Residential Drug Abuse Program. (Tr. 272, 389, 386.)

On August 6, 2008, Plaintiff filed for SSI, alleging a disability onset date of July 27, 2008. (Tr. 32, 116-122.) Plaintiff's application was denied and he requested a hearing before an administrative law judge ("ALJ"). (Tr. 86-7.) A hearing was held on April 6, 2010, before ALJ Steve Lynch, at which Plaintiff appeared with counsel and testified. (Tr. 29-70.) A

vocational expert ("VE") and Plaintiff's sister also testified at the hearing. (Id.) On July 1, 2010, the ALJ issued an unfavorable decision, finding Plaintiff not disabled. (Tr. 8-23.) Plaintiff filed a request for review of the ALJ's decision with the Appeals Council on July 16, 2010. (Tr. 5-6.) The Appeals Council denied Plaintiff's request, leaving the ALJ's decision to stand as the Commissioner's final decision. (Tr. 1-3.)

### Disability Analysis

The Commissioner engages in a sequential process ranging between one and five steps in determining whether an individual is disabled under the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); see 20 C.F.R. § 416.920(a)-(f) (describing the five-step sequence).

Step one requires the ALJ to determine if the claimant is performing substantial gainful activity ("SGA"). 20 C.F.R. § 416.920(b). To constitute SGA, the work must be both substantial, which involves significant physical or mental activities, and gainful, which is work done for pay or for profit. Id. § 416.972. If the claimant is or has been engaged in SGA, the claimant is not disabled. Id. § 416.920(b).

At step two, the ALJ must determine if the claimant has a "severe medically determinable physical and mental impairment" that meets the twelve-month duration requirement. Id. § 416.920(c). If the claimant does not have such an impairment, he is not disabled. At step three, the ALJ must determine whether the severe impairment

(or a combination of impairments) meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 416.920(d). If the ALJ determines the impairment, or combination of impairments, equals a listed impairment, then the claimant is disabled. Id.

If the adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular basis, despite the limitations imposed by his impairments. Id. § 416.945(a)(1). The ALJ uses this information to determine if the claimant can perform past relevant work at step four. Id. § 416.920(f). If the claimant cannot perform his past relevant work, the ALJ must determine if the claimant can perform other work in the national economy at step five. Id. § 416.920(g); Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).

The claimant bears the initial burden of establishing disability. Tackett, 180 F.3d at 1098. If the analysis reaches the fifth step, the burden shifts to the Commissioner to show that jobs within the claimant's RFC exist in the national economy. Id. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(h).

## The ALJ's Findings

At the first step of the five step sequential evaluation

process outlined above, the ALJ found that Plaintiff had not
engaged in SGA since August 5, 2008, the date of his application.
(Tr. 13, Finding 1.)  At step two, the ALJ found that Plaintiff had
the following severe impairments: "obesity, drug abuse, adjustment
disorder with mixed depression and anxious mood, and depression."
(Tr. 13, Finding 2.)

At the third step, the ALJ found that Plaintiff's impairment,
or combination of impairments, did not meet or equal the
requirements of a listed impairment in 20 C.F.R. Part 404, Subpt.
P, App. 1. (Tr. 13-15, Finding 3.)

Because Plaintiff did not establish disability at step three,
the ALJ assessed Plaintiff's RFC. (Tr. 15-22, Finding 4.)  The ALJ
found that Plaintiff had the RFC to perform medium work as defined
in 20 C.F.R. § 416.967(c), except that Plaintiff "is limited to
performing only simple, routine tasks and can have no interaction
with the public." (Id.)

At the fourth step, the ALJ found that Plaintiff had no past
relevant work. (Tr. 22, Finding 5.)  Finally, at step five, the
ALJ considered Plaintiff's age, education, work experience, and
RFC, and found that Plaintiff could perform jobs that exist in
significant numbers in the national economy. (Tr. 22, Finding 9.)
Based on this finding, the ALJ concluded that Plaintiff was not
disabled.

## **Standard of Review**

The Court's review is limited to whether the Commissioner's decision was based on proper legal standards and supported by substantial evidence in the record as a whole. Copeland v. Bowen, 861 F. 2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorensen v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

The Court must consider both evidence that supports and detracts from the Commissioner's decision, but the decision shall not be overturned even if there is enough evidence in the record to support a contrary decision. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the ALJ's decision is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## Discussion

Plaintiff makes the following assignments of error: (1) the ALJ improperly assessed Plaintiff's credibility; (2) the ALJ erred in assigning limited weight to Nurse Practitioner Gerald Peake's opinion and giving improper weight to a Disability Determination Services (DDS) non-examining evaluation; (3) the ALJ failed to develop the record; and (4) the ALJ's past relevant work finding is unsupported by the evidence and the hypothetical presented to the VE contained a defective RFC finding. (Pl.'s Opening Br. 20-34.)

## A.  Plaintiff's Credibility

Plaintiff argues that the ALJ improperly found that his testimony regarding his functional limitations was not credible. (Pl.'s Opening Br. 20-1.) Specifically, Plaintiff alleges that the ALJ made factual errors interpreting the record, which resulted in the ALJ incorrectly determining that Plaintiff's testimony was inconsistent. (Id.)

When a claimant has a medically documented impairment that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). Examples of clear and convincing evidence include conflicting medical evidence;

Page 7 - OPINION AND ORDER

inconsistencies either in the claimant's testimony or between his testimony and his conduct; inconsistencies between the claimant's daily activities and his alleged symptoms; a sparse work history; evidence indicating that the claimant failed to follow a prescribed course of treatment without providing adequate explanation; and testimony from physicians and third parties about the nature, severity, and effect of the alleged symptoms. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

A general assertion that a claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If, however, the "ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Here, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible. (Tr. 16.) I find that the ALJ gave several clear

and convincing reasons supporting this conclusion.

### 1.  Lack of Compliance with Medical Treatment

In assessing Plaintiff's credibility, the ALJ noted that Plaintiff failed to follow prescribed treatment. (Tr. 18.) The ALJ may rely on Plaintiff's "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment'" when making a credibility determination. Tomasetti, 533 F.3d at 1039 (quoting Smolen, 80 F.3d at 1248). The Social Security Rulings (SSR) provide that the claimant's statements may be less credible "if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p.

The ALJ noted that in May and August of 2008, Plaintiff's treating mental health provider, Susie Schenk, reported that Plaintiff had stopped taking his medication and that his decision had caused a barrier to recovery. (Tr. 18, 367, 472.) In February 2010, Nurse Peake met with Plaintiff and reported that Plaintiff was not taking his medication as prescribed. (Tr. 18, 437.) Instead, plaintiff was taking medication that he was no longer prescribed and taking the wrong amount of other medication. (Id.) Nurse Peake wrote in his notes that the changes were significantly unsafe and caused him high concern. (Tr. 437-38.) Also at this appointment, Plaintiff told Nurse Peake that he had been lying during previous appointments. (Tr. 437.) Nurse Peake also

reported that Plaintiff had been caught recently using crack cocaine. (Id.) The ALJ concluded that "these incidents of noncompliance suggest the claimant does not have a sincere interest in achieving medical and functional improvement." (Tr. 18.)

Plaintiff contends that his failure to follow the prescribed treatment should be excused due to his mental impairment. (Pl.'s Opening Br. 25.) Plaintiff relies on Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996), arguing that Plaintiff's failure to properly follow his medical treatment for a mental disorder is not a substantial basis on which to discredit Plaintiff's testimony. (Id.) However, Nguyen is distinguishable because the court in that case was considering the ALJ's treatment of a doctor's opinion, whereas in this case the analysis pertains to Plaintiff's credibility. Moreover, to the extent Nguyen can be applied to claimant's credibility, its reasoning was limited by Molina v. Astrue, 674 F.3d 1104, 1113-14 (9th Cir. 2012). In Molina, the Ninth Circuit held that it was reasonable for the ALJ to rely on claimant's failure to seek psychiatric treatment in assessing her credibility because "there was no medical evidence that [claimant]'s resistance was attributable to her mental impairment rather than her own personal preference." Id. at 1114.

Like Molina, in this case, Plaintiff did not provide evidence that his failure to properly follow prescribed treatment was due to his mental impairment. Without such evidence, it was reasonable

for the ALJ to find Plaintiff's lack of compliance evidence of his insincerity.   Therefore, the ALJ's determination is proper.

## 2.  Plaintiff's Criminal History

The ALJ also based his adverse credibility determination on Plaintiff's prior criminal history.  (Tr. 19.)  The ALJ stated that "while the claimant's criminal history is not in itself evidence which precludes him from receiving disability benefits, it does present significant issues regarding the veracity and truthfulness of his application and testimony."   (Id.)   At the hearing, Plaintiff admitted to illegally trafficking controlled substances (Tr. 62.), for which he served thirty months in prison. (Tr. 248, 389.)

Plaintiff argues that the ALJ should not have considered Plaintiff's criminal history as evidence of untruthfulness, because Plaintiff was truthful about the existence of his prior history and the nature of his conviction.  (Pl.'s Opening Br. 23.)

In assessing Plaintiff's credibility, the ALJ "may engage in ordinary techniques of credibility evaluation such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony."  Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).  This Court's review is limited to whether the ALJ's decision was based on proper legal standards and whether the decision was supported by substantial evidence in the record. Copeland, 861 F. 2d at 538 (citing Desrosiers, 846 F.2d at 575-76).

This court may not question the ALJ's interpretation of the evidence, so long as the interpretation is supported by inferences reasonably drawn from the record. <u>Batson v. Comm'r</u>, 359 F.3d 1190, 1193 (9th Cir. 2004); <u>see also</u> <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1034-35 (9th Cir. 2000) (when evidence can rationally be interpreted in more than one way, the court must uphold the Commissioner's decision).

The ALJ's decision to consider Plaintiff's prior criminal history in his credibility determination is a reasonable interpretation of the evidence, therefore this Court may not substitute another interpretation in its place. Furthermore, the ALJ's reliance on Plaintiff's criminal history is an ordinary technique of credibility evaluation. <u>See</u> <u>Hardisty v. Astrue</u>, 592 F.3d 1072, 1080 (9th Cir. 2010) (in a ruling on an Equal Access to Justice Act request, the court held the ALJ's credibility finding was substantially justified when it was based, among other factors, on claimant's prior criminal convictions). Moreover, the ALJ's credibility determination was based on other factors supported by the record.

### 3.  Plaintiff's Work History

Plaintiff further argues that the ALJ improperly considered his work history when making his credibility determination. (Pl.'s Opening Br. 21.) The ALJ noted that "the evidence does not suggest the claimant is motivated to work consistently" because Plaintiff

has a limited and sporadic work history. (Tr. 18.) The ALJ
noticed that Plaintiff's alleged onset of disability was in 2008
and Plaintiff reported no income from 2002 to 2007, as evidenced in
his summary of earnings. (Tr. 18-19, 123.) Plaintiff, however,
argues that the he worked consistently from 1984 through 2001, and
that the ALJ therefore should have interpreted this evidence to
indicate a strong work history. (Tr. 123; Pl.'s Opening Br. 21.)

An ALJ may properly consider a claimant's poor work history in
making a negative credibility finding. Thomas, 278 F.3d at 959.
As previously stated, when evidence can be reasonably interpreted
in more than one way, this Court may not question the ALJ's
interpretation, so long as that interpretation is supported by the
record. Batson, 359 F.3d at 1193; see also Aukland, 257 F.3d at
1034-35.

Here, the ALJ's interpretation of Plaintiff's work history is
supported by the record. Plaintiff alleged disability beginning in
2008, however, his earning statement indicated no income from 2002
through 2007. (Tr. 116, 123.) Even excluding his period of
incarceration, which began in 2005 and ended in early 2008,
Plaintiff's earning statement still indicated no income for the
three years leading up to his incarceration. (Tr. 248, 123.) The
ALJ's interpretation of the evidence was reasonable and his
decision to consider Plaintiff's poor work history when assessing
his credibility was proper.

## 4.  Plaintiff's Activities of Daily Living

The ALJ also found that Plaintiff's functional limitations were not as significant and limiting as Plaintiff alleged.  (Tr. 17.)  The ALJ noted that Plaintiff's activities of daily living were "quite involved."  (Id.)  For example, at appointments in August and October of 2008, Plaintiff reported that he drank coffee, smoked, and prepared three meals a day, such as sandwiches and soup. (Tr. 17, 150, 391.)  Plaintiff was able to use a telephone, do his laundry, and drive a car.  (Id.)  In August 2008, Plaintiff stated that he was able to go out alone, and he went grocery shopping for food once a week.  (Tr. 17, 153.)  Plaintiff stated he was able to pay bills, count change, and manage a savings account.  (Id.)  He watched television every day, and during his hearing he testified to using a computer and listening to music. (Tr. 17, 38, 154.)  The ALJ also noted that at an appointment with Nurse Peake in November, 2009, Plaintiff reported that he was getting out more, was social with friends, and was dining in restaurants.  (Tr. 17, 441.)  The ALJ concluded that these activities of daily living are inconsistent with the mental health symptoms alleged by the claimant. (Tr. 18.)  "They suggest a level of functioning greater than what [Plaintiff] has alleged in his application and testimony."  (Id.)

Plaintiff argues that the ALJ erred in finding that his activities of daily living were evidence of his ability to perform

full-time work.  (Pl.'s Opening Br. 28-30.)  Plaintiff supports his argument by identifying evidence in the record suggesting more limited activities of daily living than the evidence identified by the ALJ.  (<u>Id.</u>)

As stated above, when evidence in the record can be interpreted in more than one way and the ALJ's interpretation is supported by substantial evidence, this Court may not second-guess it.  <u>Batson</u>, 359 F.3d at 1193; <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).  In this case, Plaintiff's testimony about his activities of daily living was somewhat equivocal, and the ALJ's interpretation of the evidence may not be the only reasonable interpretation.  However, the ALJ's interpretation is reasonable and is supported by substantial evidence, therefore this Court may not substitute another interpretation in its place.  The ALJ's interpretation of Plaintiff's activities of daily living is proper and is therefore upheld.

### 5.  Inconsistent Statements

The ALJ also noted that Plaintiff's "inconsistent statements weaken his credibility."  (Tr. 18.)  In making a credibility determination, the ALJ may use ordinary techniques of credibility evaluation such as considering the claimant's reputation for truthfulness and any inconsistent statements in his testimony.  <u>Burch</u>, 400 F.3d at 680.

Here, the ALJ referenced Plaintiff's hearing, at which he

Page 15 - OPINION AND ORDER

testified that he had not worked since July 2008. (Tr. 18, 36.)
However, the ALJ noted that during a meeting with his Lifeworks
counselor on August 18, 2008, Plaintiff reported that he had
returned to work. (Tr. 18, 367.) Plaintiff had explained to his
counselor that his probation officer had sent him a letter
inquiring about his work status, so he immediately returned to work
because he preferred to work than meet with his probation officer.
(Id.)

Second, plaintiff testified at his hearing that he had
absenteeism problems at his last job, missing two to three days of
work per month. (Tr. 18, 49-50.) However, the ALJ noted that
Plaintiff's previous employer provided a written statement that
clearly indicated that Plaintiff did not have excessive absences.
(Tr. 18, 192-193.)

Third, the ALJ found Plaintiff was inconsistent when he
testified at his hearing that he had not worked since his
disability onset date; yet, according to the ALJ, Plaintiff's
earning statement indicated work after his alleged onset date.
(Tr. 18, 36, 131.) This finding is not supported by the record.
The ALJ referenced an earning statement (Tr. 131.), noting that the
record "shows income of $2,088 in 2009 from 82nd Fast Gas, Inc."
(Tr. 18.) However, the record indicates that Plaintiff earned
$2,088 from 82nd Fast Gas, Inc. during the first quarter of 2008,
which was before his onset date of disability. (Tr. 131.) The ALJ

erred to the extent that he based his negative credibility finding on this inconsistency.

The ALJ's overall credibility decision may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. <u>Batson</u>, 359 F.3d at 1197; <u>Coleman v. Astrue</u>, 423 Fed. Appx. 754, 756 (9th Cir. 2011). In this case, there remains substantial evidence supporting the ALJ's overall credibility determination. Therefore, although this Court found error in one credibility finding, the other inconsistent statements cited by the ALJ are supported by substantial evidence in the record and therefore his overall credibility determination is upheld.

**B.  Medical Opinion Evidence**

Plaintiff argues that the ALJ erred in giving little weight to the opinion of Plaintiff's only mental health treating provider, Gerald Peake, PMHNP. (Pl.'s Opening Br. 23.) Plaintiff also argues that the ALJ improperly gave great weight to Disability Determination Services ("DDS") non-examining evaluation. (Pl.'s Opening Br. 30.)

Nurse Peake is not considered an "acceptable medical source[]" under the regulations; rather, the regulations treat nurse-practitioners as "other sources," 20 C.F.R. § 416.913(a),(d). Evidence from "other sources" is considered under the same standard as that used to evaluate lay witness testimony. <u>Slover v. Comm'r. Soc. Sec. Admin.</u>, 2011 WL 1299615, *14-15 (D. Or. April 4, 2011).

Therefore, the ALJ may disregard a nurse-practitioner's opinion by providing reasons germane to the witness. Turner v. Comm'r. of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010) (citing Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)).

Here, the ALJ provided several reasons germane to Nurse Peake. (Tr. 20.) The ALJ noted that Nurse Peake's opinion was "much more severe and limiting than his ongoing treatment notes indicate." (Id.) In March, 2010, Nurse Peake completed a mental impairment questionnaire. (Tr. 423-30.) Much of this questionnaire was in check-box format, in which Nurse Peake checked boxes indicating that Plaintiff had three episodes of decompensation within twelve months, each lasting at least two weeks, was suffering from a residual disease process, had a history of one or more years' inability to function outside a highly supportive living arrangement, and had a complete inability to function outside his home. (Tr. 429-30, no. 26.) Nurse Peake also checked a box agreeing that if Plaintiff were to work eight hours a day, forty hours a week, it is likely that the stresses or expectations of work would cause his Global Assessment of Functioning (GAF) rating to decline. (Tr. 430, no. 30.) Nurse Peake also found that Plaintiff would likely experience substantial difficulty with stamina, pain or fatigue if he was working full time, that Plaintiff would need to work at a reduced work pace, and that Plaintiff had a "very poor" ability to work eight hours a day,

Page 18 - OPINION AND ORDER

forty hours a week at a normal work pace.   (Tr. 426, no. 12, 13.)
The nurse found Plaintiff to be extremely limited in several work-
related functional areas, including maintaining regular attendance,
working in coordination with others without being distracted,
accepting instructions, and dealing with normal work stress.  (Tr.
427-29, no. 21.)   Nurse Peake also checked a box indicating
Plaintiff would likely be absent from work more than four times a
month.  (Tr. 427, no. 20.)

        The ALJ noted the inconsistencies between the answers listed
above from the questionnaire completed by Nurse Peake on March 15,
2010, and Nurse Peake's ongoing treatment notes.  (Tr. 20.)   For
example, Nurse Peake met with Plaintiff on March 8, 2010, seven
days prior to filling out the questionnaire, and reported Plaintiff
was on time for the appointment, was pleasant and cooperative with
good eye contact, he responded appropriately to questions, and was
much less labile, less irritable, and appearing less angry than in
the past.  (Tr. 434.)   Plaintiff told Nurse Peake that he was
taking his medications as prescribed and was feeling better.  (Id.)
Nurse Peake continued Plaintiff's current medication regimen and
scheduled a follow-up appointment in six weeks.  (Tr. 435.)

        The ALJ also noted that at an appointment on May 24, 2010,
Plaintiff reported to Nurse Peake that he felt better and was doing
well.  (Tr. 20, 431.)   Plaintiff stated he felt his anxiety was
fairly well managed, his moods were stable, and he had no

significant problems with sleep. (Id.) Nurse Peake continued
Plaintiff's current medication regimen and scheduled a follow-up in
eight weeks. (Id.)

Nurse Peake opined on the March, 2010 questionnaire that
Plaintiff had "severe paranoia [with] hostility, impulsivity,
racing thought, inability to concentrate or focus. Incapable of
organize[d] work, very low frustration tolerance." (Tr. 425.)
Nurse Peake also checked a box indicating that Plaintiff suffered
from delusions. (Tr. 424.) However, the ALJ noted that Nurse
Peake repeatedly stated throughout several months of treatment
notes that "there [was] no current evidence of thought disorder
including delusions, hallucinations or paranoia." (Tr. 20, 434,
437, 441, 443, 451, 453, 455.) These inconsistencies suggested to
the ALJ that "Nurse Peake did not base his opinion on objective
medical evidence." (Tr. 20.)

The inconsistencies between Nurse Peake's treatment notes and
his questionnaire from March, 2010 are supported by substantial
evidence in the record and were therefore properly considered when
the ALJ assessed the weight of Nurse Peake's opinion.

The ALJ also found inconsistencies between Nurse Peake's
opinion and other evidence in the record. For example, the ALJ
noted that Nurse Peake predicted Plaintiff's impairments would
cause him to be absent from work more than four times a month.
(Tr. 20, 427.) However, Plaintiff's previous employer specifically

reported that Plaintiff did not have excessive absences from work. (Tr. 20, 193.)

Finally, the ALJ found that Nurse Peake's opinion was not consistent with the opinions of state agency mental consultant S. Hadi, M.D., and consultative psychologist Daniel Scharf, Ph.D.; the ALJ therefore gave greater weight to the opinions of the "acceptable medical sources," Dr. Hadi and Dr. Scharf. (Tr. 19-20.) An ALJ may give greater weight to the opinion of an "acceptable medical source" than an opinion of an "other source" because "acceptable medical sources" are the most qualified health care professionals. SSR 06-03p.

Dr. Scharf performed a consultative psychological examination of Plaintiff in October, 2008. (Tr. 387-92.) Dr. Scharf found that Plaintiff had attention, concentration, and memory problems during the interview. (Tr. 392.) He concluded that Plaintiff was able to understand and remember short and simple instructions, although would have more difficulties with complex instructions. (Id.) Dr. Hadi performed a functional capacity assessment in November, 2008. (Tr. 409-10.) Dr. Hadi opined that Plaintiff was able to perform simple jobs without complex instructions, and jobs that did not involve working closely with others. (Id.) Dr. Hadi reported that Plaintiff was markedly limited in his ability to carry out detailed instructions and his ability to maintain attention and concentration for extended periods. (Id.) The

doctor also found that Plaintiff was either not significantly limited or moderately limited in understanding and memory, social interaction, and adaptation. (Id.)

The ALJ may disregard Nurse Peak's opinion by providing reasons germane to the witness. Turner, 613 F.3d at 1223-24 (citing Lewis, 236 F.3d at 511). Here, the ALJ provided several germane reasons for assigning limited weight to Nurse Peake's opinion, reasons that are supported by substantial evidence in the record. The ALJ's analysis with regards to Nurse Peake's opinion was proper, and the ALJ's decision to give more weight to the opinions of the "acceptable medical sources" was also proper and based on appropriate legal standards. See SSR 06-03p.

## C.  Duty to Develop the Record

Plaintiff argues that the ALJ failed in his duty to develop the record with regards to Plaintiff's mental and physical impairments. (Pl.'s Opening Br. 32.) Plaintiff bears the burden of proving the existence of an impairment. Marci v. Chater, 93 F.3d 540, 543-45 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(5). Yet, in certain limited circumstances, the ALJ has an independent duty to develop the record. Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992). However, the ALJ's "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir.

2001); <u>see also</u> <u>Webb v. Barnhart</u>, 433 F.3d 683, 687 (9th Cir. 2005). The ALJ is required to seek additional evidence only if the evidence already present consistently favors the claimant. <u>Lewis</u>, 236 F.3d at 514-15 (discussing 20 C.F.R. § 404.1527(c)(3)).

Here, Plaintiff makes a broad argument alleging the ALJ failed in his duty to develop the record, but neglects to identify any specific ways in which the record should have been further developed. (Pl.'s Opening Br. 32.) Neither the ALJ nor any medical source found the record to be ambiguous or insufficient for proper evaluation. Because the existing evidence is neither ambiguous nor insufficient, and does not consistently favor Plaintiff, the ALJ's duty to more fully develop the record was not triggered.

## D. Hypothetical Presented to the VE

Finally, Plaintiff argues that the ALJ's step four findings are erroneous because the hypothetical presented to the VE contained defective RFC findings. (Pl.'s Opening Br. 32-34.) Plaintiff alleges that the hypothetical presented to the VE failed to account for all the evidence, mainly Nurse Peake's opinion. (<u>Id.</u>) However, as discussed above, the ALJ's interpretation of the evidence and his decision to assign limited weight to Nurse Peake's opinion were both proper. As such, his step four findings are upheld.

## Conclusion

Based on the foregoing reasons, the Commissioner's decision that Plaintiff was not disabled is based on substantial evidence in the record and correct legal principles; therefore the Commissioner's decision is AFFIRMED and this case is DISMISSED. IT IS SO ORDERED.

Dated this 6th day of May 2013.


_____
Ann Aiken
United States District Judge

Page 24 - OPINION AND ORDER